[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 05-16322
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 13, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 04-02142-CV-T-24-TBM

ROBERT E. NOELL, JR.,
JENNY NOELLE CHAPMAN,

Plaintiffs-Appellants,

versus

BOB WHITE, Sheriff, Pasco County, Florida,
in his official capacity,
JIM COATS, Sheriff, Pinellas County, Florida,
in his official capacity,
SHARON L. FEOLA, Special Agent,
Florida Department of Law Enforcement,
in her individual capacity,
JANICE THIBODEAUX, Deputy Sheriff,
Pinellas County, Florida, in her individual capacity,
BRIAN BERRY, Deputy Sheriff, Pinellas County,
Florida, et al.,

Defendants-Appellees,

GUY M. TUNNELL, Commissioner,
Florida Department of Law Enforcement,
in his official capacity, et al.,

Defendants.

------------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Florida
------------------------------------------------------------------

**(September 13, 2006)**

Before EDMONDSON, Chief Judge, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Plaintiffs Robert Noell ("Noell") and Jenny Noell Chapman ("Chapman") appeal the dismissal of their second amended complaint by the district court pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. No reversible error has been shown; we affirm.

Noell is the officer, director, and majority shareholder of Lee's Sunshine Vending, Inc. ("Lee's Sunshine"), a Florida corporation that owns amusement machines located at the Treasure Island Fun Center and the Flying J Travel Plaza. Chapman works for Lee's Sunshine and manages the Treasure Island Fun Center. Plaintiffs filed suit against members of the Pinellas County, Florida Sheriff's Department, members of the Pasco County, Florida Sheriff's Department, and Florida Department of Law Enforcement ("FDLE") Agent Sharon Feola, all in their individual capacity (collectively "the Individual Capacity Defendants") under 42 U.S.C. § 1983. Plaintiffs argued that their arrest and the unlawful seizure of

2

their amusement machines and other property by a task force, which included the Individual Capacity Defendants, violated the Fourth Amendment.[1] Plaintiffs also sued Jim Coats, the Sheriff of Pinellas County, and Bob White, the Sheriff of Pasco County, (collectively the "Sheriffs") in their official capacities, alleging that Plaintiffs' unlawful arrest and seizure of property resulted from the Sheriffs' policies and customs and the Sheriffs' failure to train their employees and agents.

The district court concluded that the Individual Capacity Defendants were entitled to qualified immunity protection. About the claims brought against the Sheriffs, the district court determined that Plaintiffs failed to identify a policy or custom of the Sheriffs that caused a constitutional deprivation and failed to show that the Sheriffs deliberately chose not to provide their employees with needed training.[2]

We view the facts given in Plaintiffs' complaint as true.[3] In their complaint, Plaintiffs assert that, from 1999 to 2001, the Sheriff's Offices of Pinellas and

---

[1] Plaintiffs also sued the FDLE; but, in a separate order, the district court dismissed Plaintiffs' claims against the FDLE, which Plaintiffs do not challenge on appeal.

[2] The district court also determined that Plaintiffs lacked standing to assert a claim about the seizure of property not owned by Plaintiffs but instead owned by Lee's Sunshine. Because Plaintiffs have not raised this issue on appeal, they have abandoned it. See Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.").

[3] In reviewing a dismissal under Fed.R.Civ.P. 12(b)(6), we view the allegations in the complaint as true. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).

3

Pasco Counties joined a task force started by the FDLE that conducted "Operation Bad Bet" to investigate people operating amusement games in violation of Florida law. This investigation targeted "Cherry Masters" video games, which were owned by Lee's Sunshine.

Members of the "Operation Bad Bet" task force paid multiple visits to the Treasure Island Fun Center and the Flying J Travel Plaza, where Plaintiffs operated their "Cherry Masters" or "Cherry Pluses" games. The task force determined that Plaintiffs' games violated Fla. Stat. §§ 849.15 and 849.16, which, among other things, proscribe possessing or permitting the operation of coin-operated slot machines, if, through chance, the player may receive anything of value from the slot machine. Members of the task force seized seven of Plaintiffs' amusement games at the Treasure Island Fun Center without a warrant because these games were in plain view. The task force later obtained a warrant to seize Plaintiffs' amusement games at the Flying J Travel Plaza as well as documents and $5,000 from Plaintiffs' offices. Plaintiffs later were arrested for various gambling and RICO violations.

We review a district court's grant of a motion to dismiss de novo. Owens v. Samkle Auto., Inc., 425 F.3d 1318, 1320 (11th Cir. 2005). A motion to dismiss under Fed.R.Civ.P. 12(b)(6) should be granted only if it appears beyond doubt that

4

Plaintiffs can prove no set of facts in support of their allegations that would entitle them to relief. White v. Lemacks, 183 F.3d 1253, 1255 (11th Cir. 1999).

"The defense of qualified immunity may be raised and addressed on a motion to dismiss and will be granted if the complaint fails to allege the violation of a clearly established constitutional right." Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1327 (11th Cir. 2003) (internal quotation omitted). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). To receive qualified immunity, the defendant must prove that he was acting within the scope of his discretionary authority. Williams v. Consol. City of Jacksonville, 341 F.3d 1261, 1267 (11th Cir. 2003). After the defendant establishes that he was acting within his discretionary authority, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate" by showing (1) that a constitutional violation occurred and (2) that the constitutional right was clearly established. Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003). Because the parties do not dispute that the Individual Capacity Defendants were acting within

5

their discretionary authority, we must consider whether the Individual Capacity Defendants violated a clearly established constitutional right.

In this case, Plaintiffs assert that the Individual Capacity Defendants violated the Fourth Amendment by acting without probable cause in seizing Plaintiffs' property and arresting Plaintiffs. An officer is entitled to qualified immunity if the officer's act was based on arguable probable cause, which "exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest." Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003) (internal quotation omitted). An officer may have arguable probable cause, even if the facts later establish that probable cause did not actually exist. See Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990).

Plaintiffs argue that the Individual Capacity Defendants lacked arguable probable cause to seize their amusement games because the Individual Capacity Defendants were aware that Plaintiffs' games were legal under Fla. Stat. § 849.161, which exempts certain amusement games that operate by application of a player's skill from the slot machine prohibitions of Fla. Stat. §§ 849.15 and 849.16. Plaintiffs assert that the Individual Capacity Defendants knew of the section 849.161 exemption through an earlier opinion of the Florida Attorney

General that discussed the applicability of this exemption. But Plaintiffs have not demonstrated that the games seized in this case required a level of skill sufficient to meet the section 849.161 exemption.

Plaintiffs instead rely on an affidavit[4] completed by two of the Individual Capacity Defendants that states that Plaintiffs' games were the same kind of machine as discussed in a Florida appellate court decision that noted, "[w]hile skill will significantly improve the player's winning percentage, it does not eliminate the element of chance in the machine itself." Plaintiffs argue that the reference to skill in the affidavit indicates that the Individual Capacity Defendants knew that Plaintiffs' games were covered by the section 849.161 exemption. But, as the district court correctly explained, without clearly established law interpreting section 849.161, the amount of skill required for the exemption to apply is not apparent. Therefore, officers acted with arguable probable cause; and Plaintiffs have failed to demonstrate that the Individual Capacity Defendants are not protected by qualified immunity. See Harbert Inter., Inc. v. James, 157 F.3d 1271, 1281 (11th Cir. 1998) ("So long as a government official acts within the scope of

---

[4]The affidavit was prepared to obtain a warrant authorizing the seizure of Plaintiffs' amusement games located at the Flying J Travel Plaza.

7

his discretionary authority and does not violate clearly established law, the doctrine of qualified immunity protects him.").

Plaintiffs next argue that the district court erred in dismissing their section 1983 complaint against Sheriffs White and Coats for relying on customs and policies that harmed Plaintiffs and for failing to train their agents and employees. For a plaintiff to prevail in a section 1983 case based on a governmental entity's failure to train its employees, the plaintiff must identify a policy or custom that caused his injury. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (discussing municipal liability in a failure-to-train case and explaining a municipality is "not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated [plaintiff's] constitutional rights"). A plaintiff may meet this burden by "present[ing] some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Id.; see also Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) ("Unless a policymaker knows of the need to train an officer in a particular subject area, no liability can arise from failure to train him.").

In this case, Plaintiffs have not identified a custom or policy of the Sheriffs that resulted in Plaintiffs' injury, nor have they demonstrated that the Sheriffs were

8

aware of a need to provide additional training to their officers. Therefore, the district court properly dismissed Plaintiffs' claims against Sheriffs White and Coats.

AFFIRMED.